## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KATHLEEN ODUM, individually, and as : <br> Proposed Administratrix of the Estate of : <br> OLIVER BECKER, deceased, : <br> : <br> : <br> Plaintiff, : <br> -against- : <br> : <br> BRISTOL-MYERS SQUIBB COMPANY and : <br> PFIZER INC., : <br> : <br> Defendants. : <br> : | **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff KATHLEEN ODUM, individually, and as Proposed Administratrix of the Estate of OLIVER BECKER, deceased, by and through her attorneys, Napoli Shkolnik, PLLC, brings this complaint against Defendants BRISTOL-MYERS SQUIBB COMPANY and PFIZER INC. (collectively, "Defendants"), as follows:

### INTRODUCTION

1.      This action involves claims of personal injury, economic damages, punitive damages, and other claims of damage arising from injuries and death sustained by the Decedent, OLIVER BECKER, as a direct and proximate result of both the defective nature of defendants BRISTOL-MYERS SQUIBB COMPANY and PFIZER INC. pharmaceutical product, Eliquis, also known as apixaban.

### PARTIES

2.      At all times hereinafter mentioned the Decedent, OLIVER BECKER (herein referred to as "Decedent"), was a citizen and resident of the State of Illinois, County of St. Clair.

3.     At all times hereinafter mentioned the Plaintiff, KATHLEEN ODUM (herein referred to as "Plaintiff"), was and is the daughter of Decedent and brings this action in her individual capacity and as the Proposed Administratrix of Decedent OLIVER BECKER.

4.     Upon information and belief, at all times hereinafter mentioned, defendant, BRISTOL-MYERS SQUIBB COMPANY ("BMS"), was and is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 345 Park Avenue, New York, New York. Its registered agent for service of process is: c/o C Corporation System, 208 SO LaSalle Street, Suite 214, Chicago, IL 60604.  Defendant BMS is the holder of the approved New Drug Application ("NDA") for Eliquis as well as the supplemental NDA.

5.     As part of its business, BMS was and is involved in the research, development, sales, and marketing of pharmaceutical products including Eliquis.

6.     At all relevant times, Defendant BMS was in the business of and did design, research, manufacture, test, advertise, promote, market, sell and distribute the drug Eliquis for use as an oral anticoagulant.

1.     Upon information and belief, at all times hereinafter mentioned, defendant, PFIZER INC. ("Pfizer"), was and is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 235 East 42nd Street, New York, New York. Its registered agent for service of process is: c/o C Corporation System, 208 SO LaSalle Street, Suite 214, Chicago, IL 60604.

7.     Defendant PFIZER was and is in the business of and did design, research, manufacture, test, advertise, promote, market, sell and distribute the drug Eliquis for use as an oral anticoagulant.

2

8.     In 2007, Defendants entered into a worldwide collaboration to "commercialize" apixaban (Eliquis), which they have promoted as combining BMS's "long-standing strengths in cardiovascular drug development and commercialization" with PFIZER's "global scale and expertise in this field."

## JURISDICTION

9.     This Court has personal jurisdiction over the Defendants based on Diversity of Citizenship pursuant to 28 U.S.C. Section 1332(a)(1),  and the amount in controversy is well in excess of the jurisdictional limit of $75,000.

10.     At all times herein mentioned, Plaintiff and Decedent were and are citizens and residents of the State of Illinois.

11.     At all times herein mentioned defendants BRISTOL-MYERS SQUIBB COMPANY, was and is a corporation authorized to do business under and by virtue of the laws of the State of Illinois.

12.     At all times herein mentioned defendants PFIZER INC., was and is a corporation authorized to do business under and by virtue of the laws of the State of Illinois.

13.     Defendants BRISTOL-MYERS SQUIBB COMPANY and PFIZER INC., received substantial revenue from goods used or consumed or service rendered in the State of Illinois.

## NATURE OF THE CASE

14.     This action is brought on behalf of Decedent OLIVER by Plaintiff KATHLEEN ODUM, his daughter and Proposed Administratrix of his estate.  Decedent was prescribed Eliquis, also known as apixaban, because of a diagnosis of atrial fibrillation.   In or about January 2014 and until his death on June 12, 2014, Decedent OLIVER BECKER suffered severe

physical, economic, and emotional injuries as a result of Eliquis including, but not limited to, Decedent suffering from internal bleeding which ultimately lead to his death.

15.     As a direct and proximate result of Defendants' conduct, Plaintiff and Plaintiff's Decedent suffered and incurred harm including severe pain and suffered personal injuries and incurred damages which include severe pain and suffering, medical expenses and other economic and noneconomic damages.

16.     Defendants, BRISTOL-MYERS SQUIBB COMPANY and PFIZER INC., (hereinafter collectively referred to as "Defendants") designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed Eliquis, as well as dealt with governmental regulatory bodies.

17.     In written information about the safety and risks of Eliquis, Defendants negligently and fraudulently represented to the medical and healthcare community, including Decedent's prescribing doctor, the Food and Drug Administration (hereinafter referred to as the "FDA") , to Decedent and the public in general, that Eliquis had been tested and was found to be safe and effective for its indicated uses.

18.     Defendants concealed their knowledge of Eliquis' defects, from Decedent, the FDA, the public in general and the medical community, including Decedent's prescribing doctor.

19.     These representations were made by Defendants with the intent of defrauding and deceiving Decedent, the public in general, and the medical and healthcare community including Decedent's prescribing doctor, and were made with the intent of inducing the public in general, and the medical community in particular, to recommend, dispense and purchase Eliquis, all of which evinced a callous, reckless, willful, depraved indifference to health, safety and welfare of the Decedent herein.

20.     As a result of the foregoing acts and omissions, the Decedent was caused to suffer serious and dangerous side effects including life-threatening bleeding, physical pain and mental anguish, including diminished enjoyment of life and death.

## FACTUAL BACKGROUND

21.     At all relevant times, Defendants were in the business of and did design, research, manufacture, test, advertise, promote, market, sell and distribute Eliquis as an oral anticoagulant, also known as a Factor Xa inhibitor.

22.     Defendants received FDA approval to market Eliquis in 2012 (NDA 202155).

23.     Among the uses for which it obtained permission to market Eliquis was in the treatment of prevention of any potential thromboembolic events.

24.     Approval of Eliquis was based in large part on clinical trials known as ARISTOTLE.

25.     The ARISTOTLE study was conducted under the supervision and control of Defendants, in various countries, including China.

26.     Defendants, as a means of cutting costs, chose incompetent and untrustworthy agents in China to conduct the ARISTOTLE study.

27.     Defendants' agents committed fraud in their conduct of the ARISTOTLE study, by concealing side effects which occurred in test users of Eliquis; a death which went unreported (whereas one purpose of the study was to study the rate of death in Eliquis users compared to others in Coumadin); loss of subjects to follow up; major dispensing errors including indicating that certain subjects were getting Eliquis when they were not; poor overall quality control; and changing and falsifying records, including records disappearing just before the FDA made a site visit, reportedly on the order of an employee of BMS.

28.     At a February 9, 2012 meeting between the FDA and BMS-PFIZER executives, the FDA is reported to have characterized the conduct of Defendants as showing a pattern of inadequate supervision.

29.     Defendants market Eliquis as a new oral anticoagulant treatment alternative to warfarin (Coumadin), a long-established safe treatment for preventing stroke and systemic embolism.  Defendants emphasized the supposed benefit of treatment with Eliquis over warfarin, in that Eliquis does not require periodic monitoring with blood tests and did not limit a patient's diet, and that a set dose fits all patients.

30.     When the application by defendants to the FDA was pending, in 2012, Dr. Thomas Marcinak, a physician in the FDA who reviewed the data submitted by Defendants in order to obtain approval to market Eliquis, objected to missing data from the ARISTOTLE study and recommended that the labeling which Defendants were going to use with the drug should discuss the quality control problems in ARISTOTLE, the Chinese study.

31.     Instead of admitting the major errors and frauds involved in the ARISTOTLE study, Defendants misleadingly stated publically that they were submitting "additional data" to the FDA, and to this date have never publically acknowledged the missing and incorrect data submitted to the FDA, which would be of concern to prescribing physicians and the public.

32.     After employees of Defendants wrote and submitted an article based on the ARITOTLE study for the New England Journal of Medicine, the article was reportedly attacked for its accuracy and omissions by the former editor-in-chief of that journal, Arnold Relman, M.D., including the failure to show that Eliquis was any more efficacious than low-cost warfarin.

33.     Critically, there is no antidote to Eliquis, unlike warfarin.  Therefore, in the event of hemorrhagic complications, there is no available or validated reversal agent or antidote, as there is for Coumadin.

34.     The U.S. label approved when the drug was first marketed in the U.S. and, at the time Decedent was using, it did not contain an adequate warning regarding the lack of antidote, and the significance of that problem for patients who began to bleed.

35.     After the drug was approved by the FDA, Defendants engaged in an aggressive marketing campaign for Eliquis, including extensive marketing directly to the public, via TV and print.  The chief promotional aspect of the sales pitch was that, unlike with Coumadin, the blood levels of the patient did not need to be monitored.

36.     In the course of these direct-to-consumer advertisements, Defendants overstated the efficacy of Eliquis with respect to preventing stroke and systemic embolism, failed to adequately disclose to patients that there is no drug, agent, or means to reverse the anticoagulation effects of Eliquis, and that such irreversibility would have life-threatening and fatal consequences.

37.     Prior to Decedent's use of Eliquis, Decedent became aware of the promotional materials described herein.

38.     Prior to Decedent's use of Eliquis, Decedent's prescribing physician received promotional materials and information from sales representatives of Defendants that Eliquis was just as effective as warfarin in reducing strokes in patients with non-valvular atrial fibrillation, and was more convenient, without also adequately informing prescribing physicians that there was no reversal agent that could stop or control bleeding in patients taking Eliquis.

39.     At all times relevant hereto, Defendants also failed adequately to warn emergency room doctors, surgeons, and other critical care medical professionals that unlike generally-known measures taken to treat and stabilize bleeding in users of warfarin, there is no effective agent to reverse the anticoagulation effects of Eliquis and therefore no effective means to treat and stabilize patients who experience uncontrolled bleeding while taking Eliquis.

40.     Before and after marketing Eliquis, Defendants became aware of many reports of serious hemorrhaging in users of its drugs, both as reported to the FDA and to it directly.  Yet Defendants have never disclosed to the medical profession or patients what the incidence of such adverse reactions are.

41.     Despite the clear signal generated by the side effect data, Defendants failed to either alert the public and the scientific community, or perform further investigation into the safety of Eliquis.

42.     Defendants' product labeling and prescribing information for Eliquis:

(a) failed to investigate, research, study and define fully and adequately, the safety profile of Eliquis;

(b) failed to provide adequate warnings about the true safety risks associated with the use of Eliquis;

(c) failed to provide adequate warning regarding the pharmacokinetic and pharmacodynamics variability of Eliquis and its effects on the degree of anticoagulation in a patient;

(d) failed to provide adequate warning that it is difficult or impossible to assess the degree and extent of anticoagulation in patients taking Eliquis;

(e) failed to disclose in the "Warnings" section that there is no drug, agent or means to reverse the anticoagulation effects of Eliquis;

(f) failed to advise prescribing physicians, such as the Decedent's physician, to instruct patients that there was no agent to reverse the anticoagulant effects of Eliquis;

(g) failed to provide adequate instructions on how to intervene and stabilize a patient who suffers a bleed while taking Eliquis;

(h) failed to provide adequate warnings and information related to the increased risks of bleeding events associated with aging patient populations of Eliquis users;

(i) failed to provide adequate warnings regarding the increased risk of gastrointestinal bleeds in those taking Eliquis, especially, in those patients with a prior history of gastrointestinal issues and upset;

(j) failed to provide adequate warnings regarding the increased risk of suffering a bleeding event, requiring blood transfusions in those taking Eliquis;

(k) failed to provide adequate warnings regarding the need to assess renal functioning prior to starting a patient on Eliquis and to continue testing and monitoring of renal functioning periodically while the patient is on Eliquis;

(l) failed to provide adequate warnings regarding the need to assess hepatic functioning prior to starting a patient on Eliquis and to continue testing and monitoring of hepatic functioning periodically while the patient is on Eliquis;

(m) failed to include a "BOXED WARNING" about serious bleeding events associated with Eliquis;

(n) failed to include a "BOLDED WARNING" about serious bleeding events associated with Eliquis; and

(o) in their "Medication Guide" intended for distribution to patients, to whom Eliquis has been prescribed, Defendants failed to disclose to patients that there is no drug, agent or means to reverse the anticoagulation effects of Eliquis and that if serious bleeding occurs, such irreversibility could have permanent disabling, life-threatening or fatal consequences.

43.    As a result of Defendants' aggressive marketing efforts, it had sales of $774 million in 2014, of which $281 million was just for the fourth quarter alone.  Eliquis has been referred to by the defendants as a blockbuster drug.  In support of its aggressive marketing, Defendants jointly paid more than $8 million to doctors in 2013, according to ProPublica/NY Times.

9

44.     Despite life-threatening bleeding findings in a clinical trial and other clinical evidence, Defendants failed to adequately conduct complete and proper testing of Eliquis prior to filing their New Drug Application for Eliquis.

45.     From the date Defendants received FDA approval to market Eliquis, Defendants made, distributed,  marketed, and sold Eliquis without adequate warning to Decedent's prescribing physician or Decedent that Eliquis was associated with and could cause life-threatening bleeding, presented a risk of life-threatening bleeding in patients who used it, and that Defendants had not adequately conducted complete and proper testing and studies of Eliquis with regard to severe side effects, specifically life-threatening bleeding.

46.     Upon information and belief, Defendants concealed and failed to completely disclose its knowledge that Eliquis was associated with or could cause life-threatening bleeding as well as its knowledge that they had failed to fully test or study said risk.

47.     Defendants ignored the association between the use of Eliquis and the risk of developing life-threatening bleeding.

48.     Defendants' failure to disclose information that they possessed regarding the failure to adequately test and study Eliquis for life-threatening bleeding risk further rendered warnings for this medication inadequate.

49.     By reason of the foregoing acts and omissions, Plaintiff has endured and continues to suffer emotional and mental anguish, loss of support, loss of services, loss of accumulations, medical and funeral expenses, and other economic and non-economic damages stemming from the death of the Decedent, as a result of the actions and inactions of the Defendants.

## AS AND FOR THE FIRST CAUSE OF ACTION
## PRODUCT LIABILITY – DESIGN DEFECT

50.     Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as to Defendants, and each of them as follows:

51.     The Eliquis manufactured and supplied by Defendants was defective and unsafe for its intended purpose in that the ingestion of Eliquis causes serious injuries and/or death. The defect existed in said product at the time it left the possession of the Defendants and each of them. Said product did, in fact, cause personal injuries as described herein while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and dangerous for use.

52.     The Eliquis manufactured and supplied by Defendants was placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition in that the foreseeable risks exceeded the benefits associated with the design or formulation.

53.     Alternatively, the Eliquis manufactured and supplied by Defendants was defective in design or formulation in that when it was placed in the stream of commerce in that it failed to perform as safely as an ordinary consumer would expect and was more dangerous than other anticoagulant therapies.

54.     The Eliquis drug that the Defendants designed, manufactured, assembled, inspected, tested, distributed and sold was, at the time it left the Defendants' control, defective and unreasonably dangerous for its ordinary and expected use because it contained the defective and unsafe conditions as alleged above.

55.     Further, the Eliquis Defendants manufactured, designed, assembled, inspected, tested, distributed, and sold was delivered to the Decedent and Decedent's healthcare providers without any substantial change in its design. Said products were intended to reach the ultimate user in the same condition as it left Defendants' control.

11

56.     As a result of the foregoing acts and omissions, the Decedent was caused to suffer serious and dangerous side effects including life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, shortened life expectancy, expenses for hospitalization, loss of earnings and ultimately death.

57.     As a result of the foregoing acts and omissions, Decedent's estate has suffered and incurred damages, including medical expenses; the loss of accumulations; probate, attorney, accountant and other fees and costs of an administration; and other economic and non-economic damages flowing from the death of the Decedent.

58.     As a result of the foregoing, Plaintiff and Decedent have been damaged in a sum that exceeds the jurisdictional limits of all lower courts that might otherwise have jurisdiction.

59.     WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

## AS AND FOR THE SECOND CAUSE OF ACTION
## PRODUCT LIABILITY- MANUFACTURING DEFECT

60.     Plaintiffs repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

61.     At all times herein mentioned, Defendants' drug Eliquis was used in the manner expected and intended by the Decedent.

62.     The Defendants drug Eliquis was defective at the time of their manufacture, development, production, testing, inspection, endorsement, sale, and distribution, and at the time they left the possession of the Defendants, in that, and not by way of limitation, the products

differed from the Defendants' intended result and intended design and specifications, and from other ostensibly identical units of the same product line.

63.     As a result of the foregoing acts and omissions, the Decedent was caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, shortened life expectancy, expenses for hospitalization, loss of earnings and ultimately death.

64.     As a result of the foregoing acts and omissions, Decedent's estate has suffered and incurred damages including medical expenses; the loss of accumulations; probate, attorney, accountant and other fees and costs of an administration; and other economic and non-economic damages flowing from the death of the Decedent.

65.     By reason of the foregoing, Decedent and Plaintiff have suffered injuries and damages as alleged.

66.     As a result of the foregoing, Plaintiff and Decedent have been damaged in a sum that exceeds the jurisdictional limits of all lower courts that might otherwise have jurisdiction.

## AS AND FOR THE THIRD CAUSE OF ACTION
## PRODUCT LIABILITY – FAILURE TO WARN

67.     Plaintiffs hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as to Defendants, and each of them as follows:

68.     The Eliquis was defective and unreasonably dangerous when it left the possession of the Defendants in that it contained warnings insufficient to alert consumers, including the Decedent and/or their health care providers, of the dangerous risks and reactions associated with the Eliquis,

including but not limited to serious injuries and side effects despite the Defendants' knowledge of the increased risk of these injuries over similar drugs.

69.     Eliquis was defective due to inadequate post-marketing warnings or instruction because, after Defendants knew or should have known of the risk and danger of serious bodily harm and/or death from the use of the Eliquis, Defendants failed to provide an adequate warning to consumers and/or their health care providers of the product, knowing the product could cause uncontrollable bleeding events, serious injuries and/or death.

70.     Decedent was prescribed and used the Drug for its intended purpose.

71.     Decedent could not have known about the dangers and hazards presented by the Eliquis.

72.     The warnings that were given by the Defendants were not accurate, clear, complete and/or were ambiguous.

73.     The warnings that were given by the Defendants failed to properly warn physicians of the serious injuries and side effects, specifically life-threatening bleeding, and failed to instruct physicians to test and monitor for the presence of the injuries for which Decedent and others had been placed at risk.

74.     The warnings that were given by the Defendants failed to properly warn consumers of the increased risk of life-threatening bleeding.

75.     The Decedent, and Decedent's healthcare providers reasonably relied upon the skill, superior knowledge, and judgment of the Defendants. The Defendants had a continuing duty to warn the Decedent and Decedent's healthcare providers of the dangers associated with Eliquis.  Had the Decedent received adequate warnings regarding the risks of the Eliquis, Decedent would not have used the Eliquis.

76.     As a result of the foregoing acts and omissions, the Decedent was caused to suffer serious and dangerous side effects including life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, shortened life expectancy, expenses for hospitalization, loss of earnings and ultimately death.

77.     As a result of the foregoing acts and omissions, Decedent's estate has suffered and incurred damages, including medical expenses; the loss of accumulations; probate, attorney, accountant and other fees and costs of an administration; and other economic and non-economic damages flowing from the death of the Decedent.

78.     As a result of the foregoing, Plaintiff and Decedent have been damaged in a sum that exceeds the jurisdictional limits of all lower courts that might otherwise have jurisdiction.

### AS AND FOR THE FOURTH CAUSE OF ACTION
### PRODUCT LIABILITY – STRICT LIABILITY

79.     Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as to Defendants, and each of them as follows:

80.     At all times herein mentioned, the Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and have recently acquired the Defendants who have designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed Eliquis as hereinabove described that was used by the Decedent.  That Eliquis was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

81.     At those times, Eliquis was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, the Decedent herein.

82.     The Eliquis designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective in design or formulation in that, when it left the hands of the manufacturer and suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of Eliquis.

83.     The Eliquis designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective in design and formulation in that, when it left the hands of the Defendants, manufacturers, and suppliers, it was unreasonably dangerous, and it was more dangerous than an ordinary consumer would expect.

84.     At all times herein mentioned, Eliquis was in a defective condition and unsafe, and Defendants knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by the Defendant.

85.     Defendants knew, or should have known, that at all times herein mentioned, that Eliquis was in a defective condition, and was and is inherently dangerous and unsafe.

86.     At the time of the Decedent's use of Eliquis, Eliquis was being used for the purposes and in a manner normally intended, namely for her diagnosed atrial fibrillation.

87.     Defendants with this knowledge voluntarily designed its Eliquis in a dangerous condition for use by the public, and in particular the Decedent.

88.     Defendants had a duty to create a product that was not unreasonably dangerous for its normal intended use.

89.     Defendants created a product unreasonably dangerous for its normal intended use.

90.     The Eliquis designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was manufactured defectively in that Eliquis left

the hands of Defendants in a defective condition and was unreasonably dangerous to its intended users.

91.     Eliquis as designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants reached their intended users in the same defective and unreasonably dangerous condition in which the Defendants' Eliquis was manufactured.

92.     Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed a defective product which created an unreasonable risk to the health of consumers and to the Decedent in particular; and Defendants are therefore strictly liable for the injuries sustained by the Decedent.

93.     The Decedent and Decedent's healthcare providers could not, by the exercise of reasonable care, have discovered Eliquis' defects herein mentioned and perceived its danger.

94.     Eliquis as designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate warnings or instructions, as the Defendants knew or should have known that the product created a risk of serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature and the Defendants failed to adequately warn of said risk.

95.     Eliquis as designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate warnings and inadequate testing.

96.     Eliquis as designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate post-marketing surveillance and warnings because, after Defendants knew or should have known of the risks of

serious side effects including, life-threatening bleeding, as well as other severe and permanent health consequences from Eliquis, they failed to provide adequate warnings to users or consumers of the product, and continued to improperly advertise, market and promote their product, Eliquis.

97.     By reason of the foregoing, the Defendants are strictly liable in tort to the Decedent for the manufacturing, marketing, promoting, distribution and selling of a defective product, Eliquis.

98.     Defendants' defective design, manufacturing defect, and inadequate warnings of Eliquis were acts that amount to willful, wanton, and reckless conduct by Defendants.

99.     The aforementioned defects in Defendants' drug Eliquis were a substantial factor in causing Decedent's injuries.

100.     As a result of the foregoing acts and omissions, the Decedent was caused to suffer serious and dangerous side effects including life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, shortened life expectancy, expenses for hospitalization, loss of earnings and ultimately death.

101.     As a result of the foregoing acts and omissions, Decedent's estate has suffered and incurred damages, including medical expenses; the loss of accumulations; probate, attorney, accountant and other fees and costs of an administration; and other economic and non-economic damages flowing from the death of the Decedent.

102.     By reason of the foregoing, Decedent and Plaintiff have suffered injuries and damages as alleged herein.

103.    WHEREFORE, said Plaintiff prays for judgment against Defendants as hereinafter set forth.

## AS AND FOR THE FIFTH CAUSE OF ACTION
## NEGLIGENCE

104.    Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as to Defendants, and each of them as follows:

105.    Defendants had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale and distribution of Eliquis into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable dangerous side effects.

106.    Defendants failed to exercise ordinary care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and distribution of Eliquis into interstate commerce in that Defendants knew or should have known that using Eliquis created a high risk of unreasonable, dangerous side effects, including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life and ultimately death.

107.    The negligence of the Defendants, their agents, servants, and employees, included but was not limited to the following acts and omissions:

    (a) Manufacturing, producing, promoting, formulating, creating and designing Eliquis without thoroughly testing it;

    (b) Manufacturing, producing, promoting, formulating, creating, and designing Eliquis without adequately testing it;

    (c) Not conducting sufficient testing programs to determine whether or not Eliquis was safe for use; in that Defendants herein knew or should have

known that Eliquis was unsafe and unfit for use by reason of the dangers to its users;

(d) Selling Eliquis without making proper and sufficient tests to determine the dangers to its users;

(e) Negligently failing to adequately and correctly warn the Decedent, the public, the medical and healthcare profession, and the FDA of the dangers of Eliquis;

(f) Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use Eliquis;

(g) Failing to test Eliquis and failing to adequately, sufficiently and properly test Eliquis;

(h) Negligently advertising and recommending the use of Eliquis without sufficient knowledge as to its dangerous propensities;

(i) Negligently representing that Eliquis was safe for use for its intended purpose, when, in fact, it was unsafe;

(j) Negligently representing that Eliquis had equivalent safety and efficacy as other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

(k) Negligently designing Eliquis in a manner which was dangerous to its users;

(l) Negligently manufacturing Eliquis in a manner which was dangerous to its users;

(m) Negligently producing Eliquis in a manner which was dangerous to its users;

(n) Negligently assembling Eliquis in a manner which was dangerous to its users;

(o) Concealing information from the Decedent in knowing that Eliquis was unsafe, dangerous and non-conforming with FDA regulations;

(p) Improperly concealing and misrepresenting information from the Decedent, healthcare professionals, and the FDA, concerning the severity of risks and dangers of Eliquis compared to other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and PE, and for

prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

(q) Negligently represented that one dose size fit all patients, whereas they knew or should have known that proper dosage depending on individualizing factors in users.

108.     Defendants under-reported, underestimated and downplayed the serious dangers of Eliquis.

109.     Defendants negligently compared the safety risk and dangers of Eliquis with other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

110.     Defendants were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning,  marketing and sale of Eliquis in that they:

(a) Failed to use due care in designing and manufacturing Eliquis so as to avoid the aforementioned risks to individuals when Eliquis was used for treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

(b) Failed to accompany their product with proper and accurate warnings regarding all possible adverse side effects associated with the use of Eliquis;

(c) Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the failure and malfunction of Eliquis;

(d) Failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning Eliquis;

(e) Failed to warn Decedent of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity of the side effects;

(f)  Failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Eliquis;

(g)  Failed to warn Decedent,  prior to actively encouraging the sale of Eliquis, either directly or indirectly, orally or in writing, about the need for more comprehensive, more regular medical monitoring than usual to ensure early discovery of potentially serious side effects;

(h)  Failed to instruct how to adjust the dosage to the particular patient and instead stated misleadingly that one dosage fit all patients;

(i)  Were otherwise careless and negligent.

111.   Despite the fact that Defendants knew or should have known that Eliquis caused unreasonably dangerous side effects, Defendants continued and continue to market, manufacture, distribute and sell Eliquis to consumers, including the Decedent.

112.   Defendants knew or should have known that consumers such as the Decedent would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

113.   Defendants' negligence was the proximate cause of Decedent's injuries, harm and economic loss, which Decedent suffered.

114.   As a result of the foregoing acts and omissions, the Decedent was caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, shortened life expectancy, expenses for hospitalization, loss of earnings and ultimately death.

115.   As a result of the foregoing acts and omissions, Decedent's estate has suffered and incurred damages including medical expenses; the loss of accumulations; probate, attorney, accountant and other fees and costs of an administration; and other economic and non-economic damages flowing from the death of the Decedent.

116.     By reason of the foregoing, Decedent and Plaintiff have suffered injuries and damages as alleged.

## AS AND FOR THE SIXTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

117.     Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as to Defendants, and each of them as follows:

118.     Defendants expressly warranted that Eliquis was safe and well accepted by users.

119.     Eliquis does not conform to these express representations because Eliquis is not safe and has numerous serious side effects, many of which were not accurately warned about by Defendants.

120.     As a direct and proximate result of the breach of said warranties, Decedent and Plaintiff suffered and will continue to suffer severe and permanent personal injuries, harm and economic loss.

121.     Decedent did rely on the express warranties of the Defendants herein.

122.     Members of the medical community, including physicians and other healthcare professionals, relied upon the representations and warranties of the Defendants for use of Eliquis in recommending, prescribing and dispensing Eliquis.

123.     The Defendants herein breached the aforesaid express warranties, as their drug Eliquis was defective.

124.     Defendants expressly represented to Decedent, Decedent's physicians, healthcare providers, and the FDA that Eliquis was safe and fit for use for the purposes intended, that it was of merchantable quality, that it did not produce any dangerous side effects in excess of those risks associated with other forms of treatment for reducing the risk of stroke and systemic

embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

125.    Defendants knew or should have known that, in fact, said representations and warranties were false, misleading and untrue in that Eliquis was not safe and fit for the use intended, and, in fact, produced serious injuries to the users that were not accurately identified and represented by Defendants.

126.    As a result of the foregoing acts and omissions, the Decedent was caused to suffer serious and dangerous side effects including life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, shortened life expectancy, expenses for hospitalization, loss of earnings and ultimately death.

127.    As a result of the foregoing acts and omissions, Decedent's estate has suffered and incurred damages, including medical expenses; the loss of accumulations; probate, attorney, accountant and other fees and costs of an administration; and other economic and non-economic damages flowing from the death of the Decedent.

128.    By reason of the foregoing, Decedent and Plaintiff have suffered injuries and damages as alleged herein.

### AS AND FOR THE SEVENTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTIES

129.    Plaintiff hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as to Defendants, and each of them as follows:

130.    At all times herein mentioned, the Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold Eliquis and have recently acquired the Defendants who have manufactured, compounded, portrayed,

distributed, recommended, merchandized, advertised, promoted and sold Eliquis to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation.

131.    At the time Defendants marketed, sold and distributed Eliquis for use by Decedent, Defendants knew of the use for which Eliquis was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

132.    The Defendants impliedly represented and warranted to the users of Eliquis and their physicians, healthcare providers, and the FDA that Eliquis was safe and of merchantable quality and fit for the ordinary purpose for which said product was to be used.

133.    That said representations and warranties aforementioned were false, misleading and inaccurate in that Eliquis was unsafe, unreasonably dangerous, improper, not of merchantable quality and defective.

134.    Decedent and members of the medical community and healthcare professions did rely on said implied warranty of merchantability of fitness for a particular use and purpose.

135.    Decedent and Decedent's physicians and healthcare professionals reasonably relied upon the skill and judgment of Defendants as to whether Eliquis was of merchantable quality and safe and fit for its intended use.

136.    Eliquis was placed into the stream of commerce by the Defendants in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

137.    The Defendants herein breached the aforesaid implied warranties, as their drug Eliquis was not fit for its intended purposes and uses.

138.    As a result of the foregoing acts and omissions, the Decedent was caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, shortened life expectancy, expenses for hospitalization, loss of earnings and ultimately death.

139.    As a result of the foregoing acts and omissions, Decedent's estate has suffered and incurred damages, including medical expenses; the loss of accumulations; probate, attorney, accountant, and other fees and costs of an administration; and other economic and non-economic damages flowing from the death of the Decedent.

140.    By reason of the foregoing, Decedent and Plaintiff have suffered injuries and damages as alleged herein.

## AS AND FOR THE EIGHTH CAUSE OF ACTION
## FRAUDULENT CONCEALMENT

141.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

142.    At all times during the course of dealing between Defendants and Decedent, and Decedent's healthcare providers, and the FDA, Defendants misrepresented the safety of Eliquis for its intended use.

143.    Defendants knew or were reckless in not knowing that its representations were false.

144.    In representations to Decedent, and Decedent's healthcare providers, and the FDA, Defendants fraudulently concealed and intentionally omitted the following material information:

26

(a) that Eliquis was not as safe as other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

(b) that the risks of adverse events with Eliquis were higher than those with other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

(c) that the risks of adverse events with Eliquis were not adequately tested and known by Defendants;

(d) that Defendants were aware of dangers in Eliquis, in addition to and above and beyond those associated with other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

(e) that Eliquis was defective, and that it caused dangerous side effects, including but not limited to life-threatening bleeding, as well as other severe and permanent health consequences, in a much more significant rate than other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

(f) that patients needed to be monitored more regularly than normal while using Eliquis;

(g) that Eliquis was manufactured negligently;

(h) that Eliquis was manufactured defectively;

(i) that Eliquis was manufactured improperly;

(j) that Eliquis was designed negligently;

(k) that Eliquis was designed defectively; and,

(l) that Eliquis was designed improperly.

145.    Defendants were under a duty to disclose to Decedent, and Decedent's physicians, hospitals, healthcare providers, and the FDA the defective nature of Eliquis, including but not limited to the heightened risks of life-threatening bleeding.

146.    Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used Eliquis, including the Decedent, in particular.

147.    Defendants' concealment and omissions of material facts concerning the safety of Eliquis was made purposefully, willfully, wantonly, and recklessly, to mislead Decedent, and Decedent's physicians, hospitals and healthcare providers into reliance, continued use of Eliquis, and actions thereon, and to cause them to purchase, prescribe, and dispense Eliquis and use the product.

148.    Defendants knew that Decedent, and Decedent's physicians, hospitals, healthcare providers, and the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding Eliquis, as set forth herein.

149.    Decedent, as well as Decedent's doctors, healthcare providers, and hospitals reasonably relied on facts revealed which negligently, fraudulently and purposefully did not include facts that were concealed and omitted by Defendants.

150.    As a result of the foregoing acts and omissions, the Decedent was caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, shortened life expectancy, expenses for hospitalization, loss of earnings and ultimately death.

151. As a result of the foregoing acts and omissions, Decedent's estate has suffered and incurred damages, including medical expenses; the loss of accumulations; probate, attorney, accountant, and other fees and costs of an administration; and other economic and non-economic damages flowing from the death of the decedent.

152. By reason of the foregoing, Decedent and Plaintiff have suffered injuries and damages as alleged herein.

## AS AND FOR THE NINTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION

153. Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

154. Defendants had a duty to represent to the medical and healthcare community, and to the Decedent, the FDA, and the public in general that said product, Eliquis, had been tested and found to be safe and effective to reduce the risk of stroke and systemic embolism in patients with non-valvular fibrillation, to reduce the risk of recurrence of DVT and PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

155. The representations made by Defendants were, in fact, false.

156. Defendants failed to exercise ordinary care in the representation of Eliquis, while involved in its manufacture, sale, testing, quality assurance, quality control, and distribution of said product into interstate commerce, in that Defendants negligently misrepresented Eliquis' high risk of unreasonable, dangerous side effects.

157. Defendants breached their duty in representing Eliquis' serious side effects to the medical and healthcare community, to the Decedent, the FDA and the public in general.

158.     As a result of the foregoing acts and omissions, the Decedent was caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, shortened life expectancy, expenses for hospitalization, loss of earnings and ultimately death.

159.     As a result of the foregoing acts and omissions, Decedent's estate has suffered and incurred damages, including medical expenses; the loss of accumulations; probate, attorney, accountant, and other fees and costs of an administration; and other economic and non-economic damages flowing from the death of the Decedent.

160.     By reason of the foregoing, Decedent and Plaintiff have suffered injuries and damages as alleged herein.

## AS AND FOR THE TENTH CAUSE OF ACTION
## FRAUD

161.     Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

162.     Defendants conducted research, or lack thereof, and used Eliquis as part of their research.

163.     As a result of Defendants' research and testing, or lack thereof, Defendants blatantly and intentionally distributed false information, including but not limited to assuring the public, the Decedent, Decedent's doctors, hospitals, healthcare professionals, and the FDA that Eliquis was safe and effective for use as a means to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to reduce the risk of recurrence of DVT and PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

164.    As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted certain results of testing and research to the public, healthcare professionals, and the FDA, including Decedent.

165.    Defendants had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and the Decedent, as well as Decedent's respective healthcare providers and the FDA.

166.    The information distributed to the public, the FDA, and the Decedent, by Defendants, including but not limited to reports, press releases, advertising campaigns, television commercials, print ads, magazine ads, billboards, and all other commercial media contained material representations of fact and omissions.

167.    The information distributed to the public, the FDA, and the Decedent, by Defendants intentionally included representations that Defendants' drug Eliquis was safe and effective for use to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to reduce the risk of recurrence of DVT and PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

168.    The information distributed to the public, the FDA, and the Decedent, by Defendants intentionally included representations that Defendants' drug Eliquis carried the same risks, hazards, and dangers as other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

169.    The information distributed to the public, the FDA, and the Decedent, by Defendants intentionally included false representations that Eliquis was not injurious to the health and safety of its intended users.

170.    The information distributed to the public, the FDA, and the Decedent, by Defendants intentionally included false representations that Eliquis was as potentially injurious to the health and safety of its intended users, as other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

171.    These representations were all false and misleading.

172.    Upon information and belief, Defendants intentionally supposed, ignored and disregarded test results not favorable to the Defendants, and results that demonstrated that Eliquis was not safe as a means of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery, and was not as safe as other means of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

173.    Defendants intentionally made material representations to the FDA and the public, including the medical profession, and the Decedent, regarding the safety of Eliquis, specifically but not limited to Eliquis not having dangerous and serious health and safety concerns.

174. Defendants intentionally made material representations to the FDA and the public in general, including the medical profession, and the Decedents, regarding the safety of Eliquis, specifically but not limited to Eliquis being a safe means of reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

175. It was the purpose of Defendants in making these representations to deceive and defraud the public, the FDA, and the Decedent, to gain the confidence of the public, healthcare professionals, the FDA, and the Decedent, to falsely ensure the quality and fitness for use of Eliquis and induce the public and the Decedent to purchase, request, dispense, prescribe, recommend, and continue to use Eliquis.

176. Defendants made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and the Decedent that Eliquis was fit and safe for use as treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

177. Defendants made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and the Decedent that Eliquis was fit and safe for use as treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery, and did not pose risks, dangers, or hazards above and beyond those identified and associated with other forms of treatment for reducing the risk of stroke and systemic embolism in patients

with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

178.    Defendants made claims and representations in their documents submitted to the FDA, to the public, to healthcare professionals, and the Decedent that Eliquis did not present serious health and safety risks.

179.    Defendants made claims and representations in their documents submitted to the FDA, to the public, to healthcare professionals, and the Decedent that Eliquis did not present health and safety risks greater than other oral forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

180.    These representations and others made by Defendants were false when made, and were made with a pretense of actual knowledge when knowledge did not actually exist, and were made recklessly and without regard to the actual facts.

181.    These representations and others, made by Defendants, were made with the intention of deceiving and defrauding the Decedent, including Decedent's respective healthcare professionals and the FDA, and were made in order to induce the Decedent and Decedent's respective healthcare professionals to rely upon misrepresentations and caused the Decedent to purchase, use, rely on, request, dispense, recommend, and prescribe Eliquis.

182.    Defendants, recklessly and intentionally falsely represented the dangerous and serious health and safety concerns of Eliquis to the public at large, the Decedent in particular, for the purpose of influencing the marketing of a product known to be dangerous and defective and not as safe as other alternatives, including other forms of treatment for reducing the risk of stroke

34

and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of

recurrence of DVT and PE, and for prophylaxis of DVT for patients undergoing hip and knee

replacement surgery.

183.    Defendants willfully and intentionally failed to disclose the material facts

regarding the dangerous and serious safety concerns of Eliquis by concealing and suppressing

material facts regarding the dangerous and serious health and safety concerns of Eliquis.

184.    Defendants willfully and intentionally failed to disclose the truth, failed to

disclose material facts and made false representations with the purpose and design of deceiving

and lulling the Decedent, as well as his respective healthcare professionals into a sense of

security so that Decedent would rely on the representations made by Defendants, and purchase,

use and rely on Eliquis and that Decedent's respective healthcare providers would dispense,

prescribe, and recommend the same.

185.    Defendants, through their public relations efforts, which included but were not

limited to the public statements and press releases, knew or should have known that the public,

including the Decedent, as well as Decedent's respective healthcare professionals would rely

upon the information being disseminated.

186.    Defendants utilized direct to consumer advertising to market, promote, and

advertise Eliquis.

187.    The Decedent and Decedent's respective healthcare professionals did in fact rely

on and believe the Defendants' representations to be true at the time they were made and relied

upon the representations as well as the superior knowledge of treatment for reducing the risk of

stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of

recurrence of DVT and PE, and for prophylaxis of DVT for patients undergoing hip and knee

replacement surgery, and were thereby induced to purchase, use and rely on Defendants' drug Eliquis.

188.    The Decedent and Decedent's respective healthcare providers did not know the truth with regard to the dangerous and serious health and safety concerns of Eliquis.

189.    That the Decedent did not discover the true facts with respect to the dangerous and serious health and safety concerns, and the false representations of the Defendants, nor could the Decedent with reasonable diligence have discovered the true facts.

190.    Had Decedent known the true facts with respect to the dangerous and serious health and safety concerns of Eliquis, Decedent would not have purchased, used and relied on Defendant's drug Eliquis.

191.    The Defendants' aforementioned conduct constitutes fraud and deceit, and was committed and perpetrated willfully, wantonly and purposefully on the Decedent.

192.    As a result of the foregoing acts and omissions, the Decedent was caused to suffer serious and dangerous side effects, including life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, shortened life expectancy, expenses for hospitalization, loss of earnings and ultimately death.

193.    As a result of the foregoing acts and omissions, Decedent's estate has suffered and incurred damages, including medical expenses; the loss of accumulations; probate, attorney, accountant, and other fees and costs of an administration; and other economic and non-economic damages flowing from the death of the Decedent.

194.    By reason of the foregoing, Decedent and Plaintiff have suffered injures and damages as alleged herein.

## AS AND FOR THE ELEVENTH CAUSE OF ACTION
## VIOLATION OF CONSUMER PROTECTION LAWS

195.    Plaintiff repeats, reiterates and realleges each and every allegation of this

Complaint contained in each of the foregoing paragraphs inclusive, with the same force and

effect as if more fully set forth herein.

196.    Defendants have a statutory duty to refrain from making false or fraudulent

representations and from engaging in deceptive acts or practices in the sale and promotion of

Eliquis pursuant to Illinois consumer protection laws.

197.    Defendants engaged in unfair, deceptive, false and fraudulent acts and practices in

violation of Illinois law through its false and misleading promotion of Eliquis designed to induce

Decedent to purchase and use Eliquis.

198.    Defendants' conduct as described herein constituted unfair and deceptive acts and

practices, including, but not limited to:

      (a) Publishing instructions and product material containing inaccurate and
           incomplete factual information.

      (b) Misrepresenting the nature, quality, and characteristics about the product; and

      (c) Engaging in fraudulent or deceptive conduct that creates a likelihood of
           confusion or misunderstanding.

199.    Defendants misrepresented the alleged benefits of Eliquis, failed to disclose

material information concerning known side effects of Eliquis, misrepresented the quality of

Eliquis, and otherwise engaged in fraudulent and deceptive conduct which induced Decedent to

purchase and use Eliquis.

200.    Defendants uniformly communicated the purported benefits of Eliquis while

failing to disclose the serious and dangerous side effects related to the use of Eliquis, its safety,

its efficacy, and its usefulness.  Defendants made these representations to physicians, the medical

community at large, and to patients and consumers such as Decedent in the marketing and advertising campaign described herein.

201.    Defendants' conduct in connection with Eliquis was impermissible and illegal in that it created a likelihood of confusion and misunderstanding, because Defendants misleadingly, falsely and or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy and advantages of Eliquis.

202.    Defendants' conduct as described above was a material cause of Decedent's decision to purchase Eliquis.

203.    As a direct, foreseeable and proximate cause of Defendants' conduct in violation of Florida law the Plaintiff and Decedent suffered damages, including personal injuries, economic damages, and non-economic damages. Defendants' conduct was further wanton, egregious, and reckless so as to warrant the award of punitive damages.

204.    As a result of the foregoing acts and omissions, the Decedent was caused to suffer serious and dangerous side effects, including life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, shortened life expectancy, expenses for hospitalization, loss of earnings and ultimately death.

205.    As a result of the foregoing acts and omissions, Decedent's estate has suffered and incurred damages, including medical expenses; the loss of accumulations; probate, attorney, accountant, and other fees and costs of an administration; and other economic and non-economic damages flowing from the death of the Decedent.

206.    By reason of the foregoing, Decedent and Plaintiff have suffered injuries and damages as alleged herein.

## AS AND FOR THE TWELFTH CAUSE OF ACTION
## SURVIVAL ACTION

207.    Plaintiff hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as to Defendants, and each of them as follows:

208.    All causes of action asserted in this Complaint survive the death of the Decedent.

209.    As a result of the foregoing acts and omissions on the part of the Defendants, the Decedent died on June 12, 2014 and said death was proximately caused in whole or in part by the tortious conduct and negligence, recklessness and gross negligence of the Defendants herein.

210.    Prior to Decedent's death, Decedent was hospitalized for severe and irreversible bleeding which was caused by Defendants' Eliquis.

211.    As a result of the foregoing acts and omissions, the Decedent was caused to suffer serious and dangerous side effects, including life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish including but not limited to, diminished enjoyment of life, shortened life, expenses for hospitalization, loss of earnings and ultimately death.

212.    Accordingly the Plaintiff brings all such causes of action on behalf of the Decedent and in the name of the Decedent's Estate for these damages.

213.    Plaintiff further pleads all survival damages allowed by the State of Illinois Survival Statute.

## AS AND FOR THE THIRTEENTH CAUSE OF ACTION
## WRONGFUL DEATH ACTION

214.     Plaintiff hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as to Defendants, and each of them as follows:

215.     All causes of action asserted in this Complaint survive the death of the Decedent.

216.     As a result of the foregoing acts and omissions on the part of the Defendants, the Decedent died on June 12, 2014, and said death was proximately caused in whole or in part by the tortious conduct and negligence, recklessness and gross negligence of the Defendants herein.

217.     As a direct, foreseeable and proximate result of Defendants' aforementioned conduct, Decedent's Estate has suffered and incurred damages, including medical expenses; the loss of accumulations; funeral expenses; probate, attorney, accountant, and other fees and costs of administration; and other economic and non-economic damages flowing from the death of the Decedent.

218.     Plaintiff further pleads all wrongful death damages allowed by the State of Illinois.

WHEREFORE, Plaintiff demands judgment against the defendants herein on all causes of action in an amount that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction over his causes of action alleged herein, together with interest, costs and the disbursements of this action, with interest from May 16, 2013.


Dated:  June 10, 2016

                                    NAPOLI SHKOLNIK PLLC

                                    By: /s/Eric D. Jackstadt
                                          Eric D. Jackstadt (IL 6182825)
                                          103 West Vandalia Street, Suite 125
                                          Edwardsville, IL 62025
                                          (618) 307-4528

                                          *Attorneys for Plaintiffs*